IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| NORA GILHOOLY, | ) ) ) | |
| Plaintiff, | ) | Case No. 10 C 7260 |
| v. | ) ) | Judge Virginia M. Kendall |
| UBS SECURITIES, LLC, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nora K. Gilhooly ("Gilhooly") filed an employment discrimination suit pursuant to Title VII against UBS Securities, LLC ("UBS") alleging that UBS discriminated against her when she was discharged from her job as an Associate Director at UBS. UBS moved to dismiss Gilhooly's Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court grants UBS's Motion to Dismiss without prejudice.

**BACKGROUND**

The following facts are taken from Gilhooly's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See, e.g.*, *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). In October 2006, UBS hired Gilhooly as an Associate Director in the Consumer Products group at its New York office. (Compl. ¶ 8.) Beginning in the summer of 2008, Gilhooly's supervisors allegedly examined her work with greater scrutiny because of her gender. (Compl. ¶ 11.) Gilhooly also claims that UBS employees discriminated against her by blaming her for mistakes that did not exist or were made by others. (Compl. ¶ 11.) In April 2008, UBS fired a disproportionate number of female employees from its New York office. (Compl. ¶ 10.)

In November 2008, UBS told Gilhooly that she would be transferred to UBS's Chicago office, which she did in January of 2009. (Compl. ¶¶ 12, 13.) UBS assigned her to do non-consumer work in spite of her lack of prior experience or formal training in that area and expected her to perform proficiently. (Compl. ¶ 14.) Although consumer work was available, UBS assigned it to male employees. (Compl. ¶ 14.) As a result of being assigned work for which she had no experience or training, UBS subjected her to unjustified criticism and harassment. (Compl. ¶ 15.) Due to the constant harassment and criticism, she resigned her position in September 2009. (Compl. ¶ 16.)

## STANDARD OF REVIEW

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must be "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Determining whether a complaint states a plausible claim for relief will require "the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. "'[A]bstract recitations of the elements of a cause of action or conclusory legal statements' do nothing to distinguish the particular case that is before the court from every other hypothetically possible case in that field of law." *Swanson*, 614 F.3d at 405 ((quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

**DISCUSSION**

Gilhooly alleges that UBS discriminated against her on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964. Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In evaluating Gilhooly's allegations, the Court considers whether UBS treated Gilhooly differently based on her sex, and whether the discriminatory treatment resulted in a materially adverse employment action, such as a change in the terms, conditions, or privileges of employment. *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691 (7th Cir. 2001).

**I.       Purported Difference in Treatment Not Prompted by Gilhooly's Sex**

A Title VII claim can be advanced under the direct or indirect approach. *See Lewis v. City of Chicago*, 496 F.3d 645, 650 (7th Cir. 2007). Under the indirect approach, also known as the *McDonnell Douglas* test, Gilhooly must satisfy four elements to establish a prima facie sex discrimination claim: "(1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) defendants treated similarly situated employees outside her class more favorably." *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). Here, Gilhooly acknowledges that her Complaint does not plead a prima facie case under the indirect method because she has failed to plead that UBS treated similarly situated male employees more favorably. (Pl.'s Resp. Def.'s Mot. Dismiss 3–4.) While she alleges that male UBS employees were assigned available consumer work and she was not, she failed to plead specific facts alleging that the male UBS employees were "substantial[ly] similar" in attributes such as experience and education. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000).

3

Instead, Gilhooly proceeded under the direct method of pleading discriminatory motivation. Under the direct method, a plaintiff must plead facts alleging that the decision maker admitted that his actions were "based upon the prohibited animus," or must show discrimination through a "longer chain of inferences." *Lewis*, 496 F.3d at 651 (internal quotation marks omitted). Here, Gilhooly confines her Complaint to pleading circumstantial allegations of sex discrimination, and fails to allege any direct evidence of discriminatory intent of UBS employees. *See Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

There are three types of circumstantial allegations of intentional discrimination. The first consists of "evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is . . . a mere pretext for discrimination." *Id.* The second type consists of allegations "that employees similarly situated to the plaintiff other than in the characteristic . . . on which an employer is forbidden to base a difference in treatment received systematically better treatment." *Id.* The third type consists of "bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* Of these three categories of circumstantial allegations, the allegations in the Complaint fail to fit within the first two categories. Gilhooly does not allege she was passed over for a specific job, nor has she adequately pled facts suggesting similarly situated male employees received systematically better treatment, as discussed above.

Gilhooly's Complaint relies solely on "bits and pieces" of factual material from which an inference of discriminatory intent may be drawn. She claims that UBS laid off "primarily female employees because of their gender" beginning in April of 2008; that her work was subjected to greater scrutiny because of her gender" beginning in the summer of 2008; that she was blamed for

4

alleged mistakes which did not exist and mistakes made by others," and that following her transfer to Chicago, UBS assigned available consumer work to men and denied it to her. (Compl. ¶¶ 10, 11, 14.) These bare assertions alleging adverse actions by UBS toward Gilhooly solely "because of her gender" are nothing more than a "formulaic recitation of the elements" of a sex discrimination claim. *See Iqbal*, 129 S. Ct. at 1951 (internal quotation marks omitted). Consequently, "the allegations are conclusory, and not entitled to be assumed true." *Id.*; *see also Swanson*, 614 F.3d at 405 (stating conclusory statements "do not add to the notice that Rule 8 demands").

The remaining factual allegations in Gilhooly's complaint allege that she transferred to UBS's Chicago office in January of 2009 where she was "assigned work . . . for which she had no prior experience and for which she received no formal training, but was expected to perform at a proficient level." (Compl. ¶¶ 13, 14.) This allegation does not give rise to a plausible inference of discriminatory intent; a sex discrimination claim cannot stand on the isolated allegation that UBS required Gilhooly to perform tasks outside of her experience and training. This allegation, by itself, suggests nothing about UBS's discriminatory intent. Because the Complaint's remaining factual allegations do not plead sufficient factual detail that would give rise to a plausible inference of discriminatory intent, the Complaint fails to allege a "convincing mosaic of discrimination" against UBS. *Troupe*, 20 F.3d at 737.

II. **Allegations of Constructive Discharge Do Not Adequately Plead a Materially Adverse Employment Action**

To survive a motion to dismiss, the Complaint must also plausibly plead a materially adverse employment action. *See, e.g.*, *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). "Not everything that makes an employee unhappy" rises to the level of a materially adverse

employment action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Instead, a materially adverse employment action can result if the "conditions in which he works are changed in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment." *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002).

Constructive discharge, which occurs when the employer has made the job unbearable for the employee, can constitute a materially adverse employment action. *Id.*; *see also EEOC* v. *Univ. of Chicago Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002). To plead constructive discharge, "a plaintiff needs to show that his working conditions were so intolerable that a reasonable person would have been compelled to resign." *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996); *see also Brooms v. Regal Tube Co.*, 881 F.2d 412, 423 (7th Cir. 1989), *rev'd on other grounds*, *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 534 n.12 (7th Cir. 1993). In fact, working conditions for constructive discharge must be even more intolerable than the "high standard for hostile work environment because 'in the ordinary case, an employee is expected to remain employed while seeking redress.'" *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000) (quoting *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998)). Alternatively, "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *Univ. of Chicago Hosps.*, 276 F.3d at 332.

Here, Gilhooly alleges that UBS' constant criticism and harassment about her work left her with little choice but to resign. This bare factual allegation does not give rise to a plausible inference that workplace conditions were so intolerable that a reasonable person would have been compelled

to resign. Constructive discharge must be based upon "grossly offensive conduct and commentary." *See, e.g.*, *Brooms*, 881 F.2d at 423 (supervisor showed employee several extremely offensive pornographic photographs, grabbed her arm when she attempted to seize a copy, and threatened to kill her); *Taylor v. Western and Southern Life Ins.*, 966 F.2d 1188, 1191 (7th Cir. 1992) (supervisor constantly used racist comments near employees, brandished a pistol, and put the pistol up to one employee's head). Gilhooly's "criticism and harassment" allegation lacks the required factual specificity and severity of conduct at issue in *Brooms* and *Taylor*.

Moreover, no allegations suggest UBS communicated to Gilhooly that she would be discharged. *See Univ. of Chicago Hosps.,* 276 F.3d at 332 (finding constructive discharge when, among other signs of imminent termination, employee arrived at work to find her belongings packed and her office used for storage). Therefore, Gilhooly fails to adequately plead a claim for constructive discharge.

## CONCLUSION AND ORDER

For these reasons, the Court grants the Defendant's Motion to Dismiss without prejudice.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 14, 2011